IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

INFOSTRUCTURE, INC., d/b/a CLICK 1,

    Plaintiff,

v.                                                                                         No. 1:18-cv-02230-JDB-egb

GIBSON ELECTRIC MEMBERSHIP
CORPORATION and GIBSON CONNECT
LLC,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

### INTRODUCTION AND BACKGROUND

This matter was originally brought in the Gibson County Chancery Court in Humboldt, Tennessee, on March 8, 2018, by Infostructure, Inc., d/b/a Click 1 ("Infostructure"), a telecommunications provider in West Tennessee, against the Defendants, Gibson Electric Membership Corporation ("GEMC") and Gibson Connect LLC ("GC") (collectively, "Gibson"). (Docket Entry ("D.E.") 1-1.) According to the complaint, GEMC is a nonprofit member-owned electric cooperative providing electric service to its members in Crockett, Dyer, Gibson, Haywood, Lake, Lauderdale, Obion, and Madison counties in Tennessee. GC is a nonprofit limited liability company and a wholly-owned subsidiary of GEMC.

The complaint alleged under the heading "Nature of the Case" that,

> Defendant [GEMC], through the use of subterfuge, has in the past illegally provided internet service in violation of Tennessee state law and Tennessee common law and is presently engaged in unfair and anticompetitive practices prohibited by applicable state *and federal* law which include, but are not limited to, predatory pricing and collusion in violation of [Tennessee Code Annotated §] 65-25-134.

1

(*Id.* at PageID 8-9 (emphasis added).) The six counts of the original pleading alleged violations of Tennessee Code Annotated §§ 65-25-104(a), 65-25-105(c), 7-52-603, and 65-25-134. The complaint also claimed interference with contract and business relationship. Except for the "Nature of the Case" section language, the filing made no mention of or reference to federal law.

On April 6, 2018, Gibson removed the case to this Court pursuant to 28 U.S.C. § 1441(a), which permits a defendant to remove a lawsuit falling within the original jurisdiction of the federal district courts. (D.E. 1.) The Defendants stated in the notice of removal that their action was appropriate because resolution of federal questions under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, was necessary to adjudicate Infostructure's claims, and that the state law claims were pendent to the federal claims.

In accordance with 28 U.S.C. § 1447, Plaintiff filed a motion to remand the matter to state court on April 25, 2018, arguing that the reference to federal law was unintended and that no federal claim was being asserted. (D.E. 15.) That same date, it moved to amend its complaint to delete the "and federal" language from the "Nature of the Case" section and add an allegation of violation of Tennessee Code Annotated § 47-25-102. (D.E. 14.) The motion to amend, which it appears Gibson did not oppose, was granted on May 29, 2018 (D.E. 28), and the amended complaint was filed on June 1, 2018 (D.E. 30). Defendants have responded in opposition to the motion to remand (D.E. 23) and the Plaintiff has replied (D.E. 35).

ASSERTIONS OF THE PARTIES AND ANALYSIS

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, there is a presumption that a cause of action lies outside a federal court's limited jurisdiction. *Kokkonen*, 511 U.S. at 377. The federal district court has original jurisdiction in two

circumstances: (1) where diversity jurisdiction, which has not been pleaded here, exists and (2) in "all civil actions arising under the Constitution, laws, or treaties of the United States," referred to as federal question jurisdiction. 28 U.S.C. §§ 1331-32.

On a motion for remand, the defendant bears the burden of demonstrating that removal of the case to federal court was appropriate. *State ex rel. Slatery v. Tenn. Valley Auth.*, 311 F. Supp. 3d 896, 902 (M.D. Tenn. 2018) (citing *Her Majesty the Queen v. Detroit*, 874 F.2d 332, 339 (6th Cir. 1989)). "[T]he removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006).

As noted above, the instant matter is before this Court on federal question jurisdiction grounds. To determine whether a case "arises under" federal law and, thus, whether federal question jurisdiction exists, the court is to "consider the 'well-pleaded' allegations of the complaint." *Funderwhite v. Local 55, United Ass'n,* 702 F. App'x 308, 311 (6th Cir. 2017). Under the so-called well-pleaded complaint rule, "jurisdiction exists *only* when a federal question is presented on the face of the plaintiff's complaint." *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 518 (6th Cir. 2012) (quoting *Kitzmann v. Local 619-M Graphic Commc'ns Conference*, 415 F. App'x 714, 716-18 (6th Cir. 2011)) (emphasis added). The court is to look to "the plaintiff's statement of [its] own claim," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 594 (6th Cir. 2004), recognizing "that the plaintiff is the master of [its] complaint," *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). A plaintiff may, if it so chooses, "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

However, even when, as here, a plaintiff insists that no federal claim has been alleged and that it did not intend to plead such a claim, certain exceptions to the well-pleaded complaint rule

may allow a defendant to force the plaintiff into federal court notwithstanding its desire to proceed before the state court. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). Two such exceptions -- the substantial-federal-question and artful-pleading doctrines -- have been raised by Gibson in this case. *See id.*

The Court will first consider the substantial-federal-question doctrine, which consists of three parts: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 568 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)); *see also Mays v. City of Flint, Mich.*, 871 F.3d 437, 449 (6th Cir. 2017), *cert. denied sub nom. Cook v. Mays*, 138 S. Ct. 1557 (2018). Where these requirements are met, "jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (internal quotation marks omitted). Courts must keep in mind that this category of cases is "special and small." *Mays*, 871 F.3d at 449 (citing *Gunn*, 568 U.S. at 258).

Defendants' assertion that the substantial-federal-question doctrine prevents remand focuses on Counts V and VI of the original complaint, which alleged as follows:

### COUNT V

\* \* \*

> 63. Plaintiff avers and charges that [GEMC] and [GC] have violated [Tennessee Code Annotated §] 65-25-134(b) by colluding with iRis[, a non-party "company providing wholesale bandwidth fiber networks to retailers such as Infostructure and [GEMC] throughout Tennessee and other states"] to cause iRis to refrain from providing services to Infostructure.

4

64. As a result of such violations herein, Infostructure has suffered and will continue to suffer damages by being placed in an uncompetitive disadvantage to [GEMC] and/or [GC] in providing these services.

COUNT VI

\* \* \*

66. Plaintiff avers and charges that [GEMC] and [GC] have violated [Tennessee Code Annotated §] 65-25-134 by predatorily pricing its internet/cable services and by discriminatorily denying Infostructure access to locate its equipment on infrastructure or poles owned or controlled by [GEMC] and/or [GC] in order to damage and/or put Infostructure out of business.

67. As a result of [GEMC]'s and/or [GC]'s violations herein, Infostructure has suffered and will continue to suffer damages by being placed at an uncompetitive disadvantage to [GEMC] in providing these services.

(D.E. 1-1 at PageID 9, 17-18.) At issue in both counts is Tennessee Code Annotated § 65-25-134, which provides in pertinent part that "[i]t is unlawful for a cooperative to use unfair or anticompetitive practices prohibited by applicable state or federal law. Such practices shall include, but are not limited to, predatory pricing, collusion, and tying." Tenn. Code Ann. § 65-25-134(g). Gibson submits that, as Tennessee statutory law does not define "predatory pricing" or "collusion," the definitions provided by federal law, specifically the Sherman Act, must be interpreted, construed, and applied in deciding Infostructure's § 65-25-134 claims. Thus, the Defendants are arguing that Plaintiff's state law claim arises under federal law because Infostructure must prove Gibson engaged in "predatory pricing" and/or "collusion" as defined by federal law to prevail on its state law claim. The Plaintiff does not dispute that the definitions of these terms derive ultimately from federal law.

To satisfy the first of the factors set forth in *Mikulski*, "there needs to be an *actual* dispute over a federal issue by both parties." *Funderwhite*, 702 F. App'x at 313 (citing *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 589 (6th Cir. 2013)). "In order to do so, the parties

5

must 'cross swords over' a federal issue such that two competing interpretations are asserted." *Id.* (citing *Mikulski*, 501 F.3d at 569). It appears to the Court that this element has likely been satisfied, as the issue of whether Defendants' actions constituted predatory pricing and/or collusion, as defined in the Sherman Act, is in dispute. *See Grable*, 545 U.S. at 314-15 (first prong shown where plaintiff premised its quiet title claim on failure by the Internal Revenue Service to give adequate notice as defined by federal law; notice within the meaning of federal statute therefore was an element of title claim and actually in dispute).

Gibson's position falters at the second factor -- substantiality. This element requires more than that the "federal issue be significant to the particular parties in the immediate suit[ as] that will *always* be true when the state claim necessarily raises a disputed federal issue." *Gunn*, 568 U.S. at 260 (internal quotation marks omitted). The substantiality inquiry supports an exercise of jurisdiction when the issue is important to "the federal system as a whole," for example, where the state adjudication would "undermine the development of a uniform body of [federal] law." *Id.* at 260-61 (internal quotation marks omitted). Substantiality does not exist, however, where the issue is "fact-bound and situation-specific." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006).

Just because a state statute incorporates a federal law's definition of a term does not necessarily mean that it implicates a substantial issue of federal law. *Nebab v. JFK Fin., Inc.*, No. 2:10-cv-01285-GMN-RJJ, 2011 WL 939198, at *2-3 (D. Nev. Mar. 16, 2011); *see also MacKillop v. Parliament Coach Corp.*, No. 09-cv-1939-T-23TBM, 2009 WL 3430072, at *1-2 (M.D. Fla. Oct. 21, 2009) ("no federal question jurisdiction exists if federal law is merely set up by the state as a criterion by which to decide a state law question[; t]hus, the fact that part of the state statutory

scheme requires some analysis of federal law is insufficient to invoke federal jurisdiction"). In determining substantiality, courts in this circuit consider four aspects of the case:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important . . .; (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases . . .

*Funderwhite*, 702 F. App'x at 313-14 (quoting *Mikulski*, 501 F.3d at 570). "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id.* (quoting *Mikulski*, 501 F.3d at 570).

It is undisputed that the first consideration is inapplicable to this lawsuit, as no federal agency or agency action is involved. Accordingly, this factor weighs against substantiality. *See id*. at 314 (where no federal agency was involved, first factor favored a finding that the federal interest was not substantial).

The second and fourth aspects, which are similar to one another, *Mikulski*, 501 F.3d at 570-71, do not support substantiality. When making its ruling, the court looks to whether the federal question implicates any "broader or more substantial issue." *Id.* Although the state court may be called upon to interpret definitions contained in federal law, those interpretations would not likely have broader effects, as federal courts are not bound by state court rulings. *See Gunn*, 568 U.S. at 262-65. Gibson insists that a state court decision would provide precedent for future interpretation of federal law as it relates to broadband internet services *state*wide. Defendants thereby appear to acknowledge that any state court determination in this case would not affect "the federal system as a whole." *See Gunn*, 568 U.S. at 260. Gibson's concern about the uniform interpretation of definitions of terms under the Sherman Act is not persuasive, as "the possibility that a state court

7

will incorrectly resolve a state claim is not, by itself, enough to trigger federal courts' . . . jurisdiction, even if the potential error finds its root in a misunderstanding of [federal] law." *Id.* at 263. State courts are competent to interpret and apply federal law and would be guided by, and "be expected to hew closely to," relevant federal court interpretations of the statute. *Id.* at 262.

The third factor also goes against a finding of substantiality based on Plaintiff's contention, apparently unchallenged by the Defendants, that the court's interpretation of federal law will not resolve the matter, as there are other issues, including cross-subsidizing under the state statute, to be addressed.

As the aspects of the case the Court is to consider weigh against an exercise of jurisdiction, the Court finds the federal issue herein is not substantial.

"[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto." *Grable,* 545 U.S. at 314-15. "For the federal issue will ultimately qualify for a federal forum *only* if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts." *Id.* (emphasis added); *see also Funderwhite*, 702 F. App'x at 315.

> Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.

*Grable,* 545 U.S. at 314.

Defendants aver that passage of § 65-25-134 will set the stage for "these disputes to become more common." (D.E. 23 at PageID 135.) However, courts have cautioned that allowing federal jurisdiction over what are essentially state claims "that implicate[] issues of federal law could dramatically increase the volume of federal litigation over state-law claims." *See Mays,* 871 F.3d

8

at 449-50 (citing *Grable*, 545 U.S. at 319, and *Merrill Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 811-12 (1986)). Moreover, the state has an interest in protecting its citizens from anticompetitive behavior, *see In re: Skelaxin (Metaxalone) Antitrust Litig.*, Case Nos. 1:12-md-2343, 2:12-cv-464, 2014 WL 12577068, at *9 (E.D. Tenn. May 20, 2014), and state courts frequently handle these types of matters, which "refer to or are predicated on standards set forth in federal statutes," *Peters v. Alaska Tr., LLC*, 305 F. Supp. 3d 1019, 1028 (D. Alaska 2018) (quoting *Nev. v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)).

Based on the foregoing, it is the opinion of the Court that Infostructure's complaint does not fall under the substantial-federal-question exception to the well-pleaded complaint rule.

The Court now turns to application of the artful-pleading doctrine. Under this concept, "plaintiffs may not avoid jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Funderwhite*, 702 F. App'x at 311 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981)) (alterations and internal quotation marks omitted). "Where it appears that the plaintiff may have carefully crafted [its] complaint to circumvent federal jurisdiction, [the court is to] consider whether the facts alleged in the complaint actually implicate a federal cause of action." *Berera v. Mesa Med. Group. PLLC*, 779 F.3d 352, 358 (6th Cir.) (quoting *Mikulski,* 501 F.3d at 561) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 243 (2015). "A defendant raising this doctrine may not rely on facts not alleged in the complaint." *Mikulski*, 501 F.3d at 561. "Although occasionally a removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, most of them correctly confine this practice to areas of the law pre-empted by federal substantive law." *Id.* Consequently, the artful-pleading doctrine and preemption are "closely aligned." *Id.*

As they did with respect to the substantial-federal-question doctrine, the Defendants aver that the Plaintiff has engaged in artful pleading because it has asserted state law causes of action that incorporate federal law. Gibson has presented no argument that the facts alleged in the complaint actually implicate a cause of action under the Sherman and/or Clayton Acts. Nor has any assertion been made that Plaintiff's claims are preempted by these federal statutes. Accordingly, Defendants have failed to convince the Court that the Plaintiff carefully drafted its complaint to avoid a federal cause of action.

As previously set forth herein, absent an applicable exception, the well-pleaded complaint rule counsels that federal jurisdiction exists *only* when a federal question is presented on the face of the complaint. *See Paul*, 701 F.3d at 518. The face of Infostructure's complaint, as amended, alleges only state law claims. Although amendment of the complaint to eliminate any federal claims does not divest the federal court of subject matter jurisdiction, the Court may in its discretion decline to exercise supplemental jurisdiction over the state law claims and remand the matter to state court. *See Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 583-84 (6th Cir. 2011); *Eastman*, 438 F.3d at 551. The Sixth Circuit has instructed that, "[i]n determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (internal quotation marks omitted). "A district court may also consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case." *Id.* at 952 (quoting *Cohill*, 484 U.S. at 357) (internal quotation marks omitted). "If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors supports a remand of the state-

law claims." *Id.* (quoting *Cohill*, 484 U.S. at 357) (internal quotation marks omitted). The United States Supreme Court cautioned in *Cohill,* however, that the mere specter of forum manipulation "hardly justifies a categorical prohibition on the remand of cases involving state-law claims." *Cohill*, 484 U.S. at 357.

Here, the Court has ruled on no substantive motions and its involvement in this case has been minimal thus far.[1] There is no reason for this Court to continue to hear this matter when the state court is equally competent to do so and likely has a better grasp of the law in its own forum. Perhaps most importantly, § 65-25-134 is a relatively new statute, enacted in 2017, and apparently has not yet been addressed by the Tennessee courts. Comity would not, in the Court's view, be served by giving that opportunity first to a federal court. Moreover, litigating this matter in state court would not undermine or sacrifice convenience or fairness.

With respect to forum manipulation, the Court credits the Plaintiff's assertion that the inclusion of the words "and federal" in the original complaint was a mere scrivener's error. In so doing, the Court finds significant the fact that Infostructure sought to amend its complaint to remove the language some nineteen days after removal. Thus, this case is distinguishable from *Harper v. AutoAlliance International, Inc.*, 392 F.3d 195 (6th Cir. 2004), in which the Sixth Circuit upheld the exercise of supplemental jurisdiction based on factors including presence of the case on the court's docket for eleven months, the completion of discovery, and substantive rulings by the court on several motions. *Harper*, 392 F.3d at 211-12. There was also evidence of forum manipulation. *Id.* As the court explained:

> It was only after the district court had denied his first motion to remand that Harper dropped his Title VII claim. Then, Harper did not immediately move for remand, but instead proceeded with his remaining claims in federal court for almost six months more. Only after discovery had been completed, the dispositive motion

---

[1]The case has been stayed pending the Court's ruling on the instant motion.

deadline had passed, and Harper was faced with dismissal of all of his claims on summary judgment, did he again seek remand to the state court. We agree with the district court that "[s]uch timing appears suspicious and raises questions about Plaintiff's motives in seeking remand."

*Id.* None of these circumstances are present in this case. Consequently, the balance of the values to be considered by the Court does not favor an exercise of supplemental jurisdiction over the Plaintiff's state law claims.

CONCLUSION

For the reasons articulated herein, this matter is REMANDED to the Chancery Court of Gibson County, Tennessee, in Humboldt. The Clerk of Court is DIRECTED to mail a certified copy of this order, pursuant to 28 U.S.C. § 1447(c), to the Gibson County Chancery Clerk, terminate all pending motions, and close this matter.

IT IS SO ORDERED this 24th day of August 2018.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE